# azcentral.

PHOENIX

# Backpage trial set to begin; former New Times execs charged with aiding prostitution

**Richard Ruelas** Arizona Republic
Published 11:41 a.m. MT Aug. 30, 2021

The ad on Backpage.com called her "Nadia" and described her as a slender brunette. Though Crystal MacMartin was a blonde, her agency never worried much about matching preferred hair color, thinking escorts could say they had dyed their hair.

The police report documenting those details and the events of June 22, 2012, would describe MacMartin in starker terms: Covered in blood, nearly two dozen stab wounds to her back, abdomen and chest, including a fatal one that punctured her heart.

Police said the man who summoned her to his Scottsdale apartment, now serving a life sentence after pleading guilty to first-degree murder, viciously attacked her with a butcher's knife.

MacMartin would be listed as Victim 6 in a lengthy indictment handed down in 2018 against the founders of the Backpage website. Her death was used to build the case that executives and employees of the since-shuttered website knew they were facilitating prostitution and continually turned a blind eye to the consequences.

The judge in the case has ruled that federal prosecutors must "sanitize" any planned testimony about the murders of women who advertised on Backpage, saying details of the murders would be overly prejudicial to the jury.

But the deaths of the women could still be the subject of testimony jurors hear in the trial that opens in U.S. District Court on Wednesday, Sept 1.

MacMartin's sister has been listed by prosecutors as a potential witness. At a hearing on Aug. 20, the final one before trial, prosecutors said it was not clear if she would be called to testify.

At that same hearing, a defense attorney, Paul Cambria, fretted that he would have to fend off a "parade of horribles" introduced by prosecutors in an effort to get the jury to see Backpage operations in a negative light.

Cambria, one of the attorneys representing Michael Lacey, who co-founded Backpage, said that the case instead should center on something more vital, if mundane: A person's First Amendment right to publish.

"This is a First Amendment case," Cambria said during the Aug. 20 hearing. "I know the government doesn't want it to be, but it is."

## From Phoenix New Times to prostitution claims

Lacey and another Backpage co-founder, James Larkin, already had made their names in the publishing world before starting the website. The pair turned the alternative weekly Phoenix New Times into a national juggernaut of tabloids, eventually taking over the venerated Village Voice in New York.

As classified advertising moved online, most notably on the website Craigslist, New Times employee Carl Ferrer pitched Lacey and Larkin on the idea of starting a competing classified advertising website.

The name of it, Backpage.com, came from the literal back page of classified advertising in the printed tabloid, which sold at a premium.

Although the website hosted ads for furniture and concert tickets, according to prosecutors, most of the revenue came from the adult section.

Lacey, in an email described by prosecutors in the indictment, said such ads had long been a fixture in printed tabloids. Lacey described it as being in the company's "DNA."

The federal government seized and shut down the Backpage website on the same day that Lacey, Larkin and other former executives were indicted.

Ferrer has since pleaded guilty, both for himself and on behalf of Backpage, where he was CEO. In his plea, Ferrer acknowledged that he conspired to launder revenues from the ads, and that he conspired to sanitize "escort" ads by removing photos and words that were indicative of prostitution.

Ferrer, as part of his plea, agreed to help in the prosecution of Lacey, Larkin and the other defendants.

Besides Lacey and Larkin, other Backpage executives charged included Scott Spear, former executive vice president; John "Jed" Brunst, former chief financial officer; Andrew Padilla, operations manager; and Joye Vaught, assistant operations manager.

Spear and Brunst were also former executives of New Times.

Lacey and Larkin released a joint statement on Monday, proclaiming their innocence. "We have the knowledge that we are not guilty," the statement read, "and the determination not to bow before the authoritarian mindset that demanded we suppress Constitutionally-protected speech and now prosecutes us for having refused to do so."

Each defendant is charged with 51 counts related to facilitating prostitution. Lacey, Larkin, Spear and Brunst face additional charges related to money laundering.

Testimony and evidence for those counts will center around complicated financial transactions, some involving cryptocurrency.

The company, according to the indictment, was netting more than $100 million annually.

Among the assets seized from the executives were the Paradise Valley and Sedona homes of Lacey and an apartment in Paris owned by Larkin.

## A battle between online sex sales and the First Amendment

Defense attorneys are expected to argue, based on pre-trial briefings and hearings, that the online advertisements hosted by Backpage carried the same First Amendment protections as advertisements published in the printed newspaper.

More so, a federal law, the Communications Decency Act, specifically protects online publishers from being liable for content posted by others.

Cambria argued in the pre-trial hearing that jurors should be explicitly told that the Backpage ads in question are presumed to be protected speech.

"The possibility of an illegal result (from the ads) still does not remove the protection," Cambria said. "When it isn't on its face a criminal communication, then the First Amendment applies."

Prosecutors, though, say that Backpage was not just a publisher of the ads, but a knowing participant in the business of prostitution. Such conduct, prosecutors argue, is not protected speech.

According to pre-trial briefings, the government has more than 500,000 emails that show Backpage executives not only knew they were involved in the prostitution business, but they also worked to make it more lucrative.

What was being offered in the classified ads posted on Backpage was intentionally occluded, prosecutors say. The ads were written in a code known to frequent buyers. Someone posting about 80 roses, for example, wanted that many dollar bills, not flowers.

Another coded phrase, "new in town," was, according to prosecutors, used by people trafficking girls from place to place. Despite being told by anti-trafficking advocates the meaning of that term, the indictment alleges, Backpage accepted ads with that phrase for seven years.

Prosecutors say the emails show executives knowingly discussed how to balance keeping law enforcement and reporters at bay, while still keeping customers happy. Various levels of nudity and language were allowed, the indictment says, depending on whether Backpage was feeling scrutiny from outsiders.

The indictment listed the stories of five victims who used Backpage for prostitution advertisements while under 18. It is not clear how many women who were advertised on Backpage might be called to testify before the jury.

In a May filing with the court, prosecutors said that any former prostitutes who do take the stand "will testify about how www.Backpage.com made it easy for them to enter the prostitution life and to be trafficked."

Beyond that testimony, the bulk of the prosecution's case will be documents and emails sent among Backpage employees, Assistant U.S. Attorney Kevin Rapp told Judge Susan Brnovich at the Aug. 20 hearing.

Rapp said that "95% of the evidence in this case came from the defendants. They gave it to us."

In one of those emails, Lacey drafted an editorial that seemed to defend Backpage's participation in prostitution.

"Backpage is part of the solution," he wrote in the essay, as quoted in the indictment. "For the very first time, the oldest profession in the world has transparency, record keeping and safeguards."

That line and others were edited out of the submitted editorial, the indictment said.

Another series of emails were sent to a company in India tasked with moderating the ads on Backpage, looking for terms indicative of prostitution and removing them.

According to the indictment, that outsourcing came as Backpage expected an increase in adult-oriented ads after the website Craigslist, under pressure from law enforcement, lawmakers and anti-sex trafficking advocates, agreed to shut down its adult section.

That outsourcing of work meant that the company had to be explicit about what it allowed on its site.

An email to moderators in India, sent in May 2012, according to the indictment, contained a spreadsheet of 600 words and phrases indicative of prostitution. The spreadsheet indicated whether use of the phrase should mean an ad ought to be deleted entirely, or whether only the offending word should be struck, the indictment said.

## The line blurs as prosecutors face challenge of ambiguity

However, defense attorneys say that the government needs to do more than show Backpage had a general culture of allowing ads for prostitution. To overcome the First Amendment protections, they argue, the government must show that

specific ads listed in the indictment resulted in criminal conduct and that the defendants would have reasonably known about it.

"[S]pecific intent is required to prove these charges," said Whitney Bernstein, an attorney for Larkin, during the pre-trial hearing.

The indictment charged Lacey and Larkin with a single count of conspiracy to facilitate prostitution across state lines. But, it goes on to list 50 specific ads published between 2013 and 2018, charging each one as a separate example of facilitating prostitution.

One of those ads listed contained a price list for "half hour sessions" and used a colloquial term for oral sex. Another offered to "blur restrictions between financial transaction and Romantic Connection."

Cambria, in court, said that one of the ads in the indictment appeared to be a possibly illegal transaction, though he did not specify which one. The rest of them, he said, were "ambiguous" and merely "sounds like it's illegal."

That ambiguity around the ads apparently extends beyond Backpage.

The operator who dispatched MacMartin to the Scottsdale apartment where she would be stabbed to death told a Scottsdale Police detective that, as far as she knew, the girls were not hired for sex, according to a police report.

That dispatcher said that, in her understanding, the girls were being sent to be companions. Some become therapists, listening to men crying over broken marriages, she told the detective.

The detective, according to the report, seemed skeptical. He asked the dispatcher whether she thought more than companionship could be taking place. She said she didn't want to speculate.

Case 2:18-cr-00422-SMB   Document 1254-1   Filed 08/31/21   Page 8 of 8

Her answer indicated she wasn't looking for a legal shield as much as an emotional one.

"Well," she told the detective, "honestly, it keeps me feeling okay about what I'm doing."

***Thank you for subscribing.*** *This premium content is made possible because of your continued support of local journalism.*